UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

2024 APR -2 PM 3: 56

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )     Case No. 2:21-cr-00022 |
| | ) |
| LOREN SENNA | ) |
| | ) |

## OPINION AND ORDER DENYING DEFENDANT'S
## MOTION TO DISMISS AND MOTION TO SUPPRESS
(Doc. 130 & 131)

Defendant Loren Senna is charged in a five-count Second Superseding Indictment
with knowingly and intentionally possessing with intent to distribute cocaine base in
violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) (Count One), three counts of
knowingly possessing in and affecting interstate commerce firearms or ammunition
having been convicted of a crime punishable by imprisonment for a term exceeding one
year in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (Counts Two, Three, and Four),
and possessing a firearm in furtherance of a drug trafficking crime in violation of 18
U.S.C. § 924(c)(1)(A)(i) (Count Five). *See* Doc. 116.

Pending before the court is Mr. Senna's motion to dismiss Counts Two through
Four of the Second Superseding Indictment because he asserts 18 U.S.C. § 922(g)(1)
violates the Second Amendment facially and as applied to him. (Doc. 130.) He also
moves to suppress any in-court identification by Officer Huynh, arguing the
government's identification procedure was unnecessarily suggestive and thereby violated
due process. (Doc. 131.)

The government opposed Mr. Senna's motions on December 18 and 12, 2023,
(Docs. 137 & 136, respectively), however, it represented that it did not intend to ask
Officer Huynh to make an in-court identification of Mr. Senna. Accordingly, Mr. Senna's
motion to suppress that identification (Doc. 131) is DENIED AS MOOT.

After Mr. Senna filed a reply in support of his motion to dismiss on January 8,

2024, (Doc. 140), the court held a hearing on March 15, 2024, at which time it took the remaining motion to dismiss under advisement.

The government is represented by Assistant United States Attorneys Nicole P. Cate and Zachary B. Stendig. Mr. Senna is represented by Mark A. Kaplan, Esq., and Natasha Sen, Esq.

## I.    Conclusions of Law and Analysis.

Citing *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), Mr. Senna seeks dismissal of Counts Two through Four of the Second Superseding Indictment on the grounds that § 922(g)(1) violates the Second Amendment right to keep and bear arms both facially and as applied to him.[1] Although he acknowledges the court's opinion in *United States v. Delima*, 2023 WL 6443925 (D. Vt. Oct. 3, 2023), Mr. Senna argues that § 922(g)(1) is facially unconstitutional based on then Judge Barrett's dissenting opinion in *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019). There, then Judge Barrett reviewed historical arguments regarding felon dispossession laws and concluded that "[a]bsent evidence that [the defendant] either belongs to a dangerous category or bears individual markers of risk, permanently disqualifying [the defendant] from possessing a gun violates the Second Amendment." *Id.* at 451 (Barrett, J., dissenting). The government argues then Judge Barrett's dissent in *Kanter* is not controlling precedent, contradicts binding Second Circuit case law, and that numerous courts have ruled that § 922(g)(1) is consistent with a historical tradition of firearm regulation for convicted felons.

Under Federal Rule of Criminal Procedure 12(b), a defendant "may raise by

---

[1] "A 'facial challenge' to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 174 (2d Cir. 2006). "Generally, '[t]o succeed in a typical facial attack, [a plaintiff] would have to establish "that no set of circumstances exists under which [the challenged statute] would be valid," or that the statute lacks any "plainly legitimate sweep."'" *Picard v. Magliano*, 42 F.4th 89, 101 (2d Cir. 2022) (alterations in original) (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010)). In contrast, an "as-applied challenge" "requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right." *Field Day, LLC*, 463 F.3d at 174 (internal quotation marks omitted).

pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "[A] federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute." *United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012).

> Section 922(g)(1) provides:

> It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(l).

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Mr. Senna is one of "the people."[2]

In its decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), *McDonald v. City of Chicago*, 561 U.S. 742 (2010), and *Bruen*, the Supreme Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense[,]" as well as "an individual's right to carry a handgun for self-defense outside the home."[3] *Bruen*, 597 U.S. at 8-10. In

---

[2] *See District of Columbia v. Heller*, 554 U.S. 570, 580-81 (2008) (observing that since "in all six other provisions of the Constitution that mention 'the people,' the term unambiguously refers to all members of the political community, not an unspecified subset[,]" there is therefore "a strong presumption that the Second Amendment right is exercised individually and belongs to all Americans"); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990) (noting that "the people" referenced by the Second Amendment aligns with other constitutional provisions as encompassing "a class of persons who are part of a national community") (internal quotation marks omitted).

[3] In *United States v. Delima*, 2023 WL 6443925 (D. Vt. Oct. 3, 2023), this court concluded that "'the people'" "includes convicted felons[,] . . . [h]owever, 'the people' and 'law-abiding citizens' are not synonymous." *Id.* at *1 (citations omitted). Whether and when non-law abiding citizens retain their Second Amendment rights is unclear. *See Antonyuk v. Chiumento*, 89 F.4th 271, 312-13 (2d Cir. 2023) ("Though the Supreme Court has suggested that 'law-abiding,' 'responsible,' and/or 'ordinary' individuals are protected by the Second Amendment, it is far from clear whether these adjectives describe individuals who stand *outside* the Second

3

determining whether a firearm restriction violated the U.S. Constitution, the *Bruen* court
articulated a new two-step analysis:

> When the Second Amendment's plain text covers an individual's conduct,
> the Constitution presumptively protects that conduct. The government must
> then justify its regulation by demonstrating that it is consistent with the
> Nation's historical tradition of firearm regulation. Only then may a court
> conclude that the individual's conduct falls outside the Second
> Amendment's "unqualified command."

*Id.* at 24.

If a challenged regulation "addresses a general societal problem that has persisted
since the 18th century" and there is a "lack of a distinctly similar historical regulation
addressing that problem[,]" a restraint on the right to bear arms may be unconstitutional.
*Id.* at 26. If a case "implicat[es] unprecedented societal concerns or dramatic
technological changes[,]" courts must engage in "analogical reasoning" to compare
historical and modern regulations and determine whether they are "relevantly similar" in
"how and why the regulations burden a law-abiding citizen's right to armed
self-defense." *Id.* at 27-29. Although "courts should not 'uphold every modern law that
remotely resembles a historical analogue, . . . analogical reasoning requires only that the
government identify a well-established and representative historical *analogue*, not a
historical *twin.*" *Id.* at 30 (emphasis in original). The court is "entitled to decide a case
based on the historical record compiled by the parties." *Id.* at 25 n.6. The Supreme Court
described this "historical inquiry" of "reasoning by analogy" as a "commonplace task for
any lawyer or judge."[4] *Bruen*, 597 U.S. at 28.

The government contends that the court need not reach the *Bruen* two-step
analysis because *Bruen* did not abrogate the Second Circuit's ruling in *United States v.*

---

Amendment or instead those who may be disarmed *consistent with* that Amendment.")
(emphasis in original) (citations omitted). The court need not resolve this question to address Mr.
Senna's arguments.

[4] The abundance of post-*Bruen* litigation appears to belie the simplicity of this task.

*Bogle* that § 922(g)(1) is constitutional. *See United States v. Bogle*, 717 F.3d 281, 281-82 (2d Cir. 2013) (per curiam).

As this court recently observed, "[a]lthough the Second Circuit's decision in *Bogle* preceded the Supreme Court's decision in *Bruen*, numerous courts have concluded that the *Bruen* did not abrogate or overrule *Bogle*." *United States v. Lane*, 2023 WL 5614798, at \*6 (D. Vt. Aug. 24, 2023) (collecting cases and citing *Bogle* to support conclusion that § 922(g)(1) is constitutional after *Bruen*).[5] In reaching its holding, the *Bogle* court noted that it would "join every other circuit" and "affirm[] that § 922(g)(1) is a constitutional restriction on the Second Amendment rights of convicted felons[,]" 717 F.3d at 281-82, based on the Supreme Court's assurances in *Heller* and *McDonald* that "longstanding prohibitions on the possession of firearms by felons" remain constitutional. *Heller*, 554 U.S. at 626 ("[T]he right secured by the Second Amendment is not unlimited."); *McDonald*, 561 U.S. at 786 ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons . . . . We repeat those assurances here.") (internal quotation marks omitted). This court adopts a similar approach.

The majority in *Bruen* explained that its decision not only did not abrogate *Heller* but was "consistent with *Heller* and *McDonald*," 597 U.S. at 10, and merely "made the

---

[5] *See also United States v. Davila*, 2023 WL 5361799, at \*2 (S.D.N.Y. Aug. 22, 2023) ("*Bogle*'s holding thus remains binding on this Court."); *United States v. Harrison*, 2023 WL 4670957, at \*6, \*8 (N.D.N.Y. July 20, 2023) (observing that "about 140 district courts" and "multiple circuits have already considered and rejected" *Bruen* challenges to § 922(g)(1), and agreeing that "*Bogle* remains binding precedent in this Circuit on the constitutional question of felon disarmament under § 922(g)(l)"); *United States v. Hampton*, 676 F. Supp. 3d 283, 300 (S.D.N.Y. 2023) (explaining that *Bruen* "does not disrupt or abrogate *Heller* and *McDonald*'s endorsements of felon-in-possession laws" and did not disturb the Second Circuit's binding precedent in *Bogle*); *United States v. Garlick*, 2023 WL 2575664, at \*5 (S.D.N.Y. Mar. 20, 2023) ("*Bruen* does not alter the holding of *Bogle*[.]"); *United States v. Barnes*, 2023 WL 2268129, at \*2 (S.D.N.Y. Feb. 28, 2023) ("Because *Bruen* did not disturb either of those two precedents, the Second Circuit's holding in *Bogle* continues to govern this issue."); *United States v. King*, 634 F. Supp. 3d 76, 83 (S.D.N.Y. 2022) (upholding § 922(g)(1) as constitutional in light of *Bogle*); *United States v. Sternquist*, 2023 WL 6066076, \*5 (E.D.N.Y. Sept. 15, 2023) ("[T]his Court finds that § 922(g)(1) is constitutional on its face and does not violate the Second Amendment under established Second Circuit precedent.").

constitutional standard endorsed in *Heller* more explicit[.]" *Id.* at 31; *see also id.* at 26 (noting that *Bruen* applies the "test that we set forth in *Heller*"). Writing separately, several individual justices underscored that nothing in *Bruen* disturbed *Heller*'s and *McDonald*'s determination that a prohibition on felons possessing firearms was constitutional.[6] All members of the *Bruen* court further agreed that, under the Second Amendment, the government may not prohibit "law-abiding citizens" from possessing firearms. 597 U.S. at 33 n.8 (majority) ("[A] State may not prevent *law-abiding citizens* from publicly carrying handguns because they have not demonstrated a special need for self-defense.") (emphasis supplied).[7] In light of the foregoing, the court joins other courts in the Second Circuit in concluding that § 922(g)(1) is facially constitutional.

Mr. Senna argues § 922(g)(1) is unconstitutional as applied to him because he was convicted for conspiracy to distribute heroin, a felony, in 2003 but this crime was non-violent. Thereafter he was convicted of six misdemeanor offenses.[8] He argues the age of

---

[6] *See New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 72 (2022) (Alito, J., concurring) (noting that *Bruen* does not "disturb[] anything that we said in *Heller* or *McDonald v. Chicago* . . . about restrictions that may be imposed on the possession or carrying of guns"); *id.* at 80 (Kavanaugh, J., and Roberts, C.J., concurring) (quoting *Heller* and observing that "as *Heller* and *McDonald* established and the Court today again explains, . . . [p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations"); *id.* at 129 (Breyer, Sotomayor, and Kagan, J.J., dissenting) ("Like Justice Kavanaugh, I understand the Court's opinion today to cast no doubt on that aspect of *Heller*'s holding.") (further capitalization omitted); *see also Vincent v. Garland*, 2023 WL 5988299, at *4 (10th Cir. Sept. 15, 2023) (concluding that "[g]iven the six Justices' reaffirmation of the *Heller* language[,] . . . *Bruen* did not indisputably and pellucidly abrogate [Tenth Circuit precedent]" upholding the constitutionality of the ban on felon firearm possession).

[7] *See also Bruen*, 597 U.S. at 76 (Alito, J., concurring) ("All that we decide in this case is that the Second Amendment protects the right of *law-abiding people* to carry a gun outside the home for self-defense[.]) (emphasis supplied); *id.* at 79 (Kavanaugh, J., concurring) ("Those features of New York's regime—the unchanneled discretion for licensing officials and the special-need requirement—in effect deny the right to carry handguns for self-defense to many 'ordinary, *law-abiding citizens.'*") (emphasis supplied) (citation omitted); *id.* at 129 (Breyer, Sotomayor, and Kagan, J.J., dissenting) (understanding that the majority "cast[s] no doubt on that aspect of *Heller*'s holding").

[8] Mr. Senna's misdemeanor offenses include two simple assaults, one in 2002 and one in 2010, and leaving the scene of an accident in 2014. He does not provide information regarding the other three misdemeanors, nor does the government.

his felony conviction weighs in favor of finding he should not be banned from firearm possession. He cites three cases involving successful as-applied challenges to § 922(g)(1),[9] however, he acknowledges these opinions are "outliers[.]" (Doc. 130 at 16.) They are also inconsistent the "weight of the authority analyzing § 922(g)(1)'s constitutionality in *Bruen*'s wake[,]" *United States v. Sternquist*, 2023 WL 6066076, at *6 (E.D.N.Y. Sept. 15, 2023), including decisions within the Second Circuit that § 922(g)(1) is constitutional as applied to persons convicted of drug-related felonies.[10]

As the Second Circuit has observed, "drug trafficking" is a "crime[] frequently associated with violence." *United States v. Bailey*, 743 F.3d 322, 340 (2d Cir. 2014); *see also United States v. Patterson*, 25 F.4th 123, 143 (2d Cir. 2022) (noting that "drug trafficking[]" presents a "risk of violence"); *United States v. Gaskin*, 364 F.3d 438, 457 (2d Cir. 2004) (acknowledging that "guns are tools of the narcotics trade[]"). In addition, Mr. Senna has incurred at least two misdemeanor convictions for crimes that include attempting to cause or causing bodily injury, or putting another in fear of serious bodily injury. *See* 13 V.S.A. § 1023(a) ("A person is guilty of simple assault if he or she: (1) attempts to cause or purposely, knowingly, or recklessly causes bodily injury to another; or (2) negligently causes bodily injury to another with a deadly weapon; or (3) attempts

---

[9] *See Range v. Att'y Gen. U.S.*, 69 F.4th 96, 106 (3d Cir. 2023) (en banc) (upholding a challenge by defendant who pled guilty to a state misdemeanor offense of theft of food stamps that nonetheless qualified as a felony for purposes of § 922(g)(1) and noting that the ruling was "only as applied to him"); *United States v. Bullock*, 2023 WL 4232309, at *31 (S.D. Miss. June 28, 2023) (concluding government did not prove historical tradition of lifetime disarmament of convicted felons and holding § 922(g)(1) was unconstitutional as applied to felon convicted of aggravated assault and manslaughter twenty-five years prior); *United States v. Quailes*, 2023 WL 5401733, at *9 (M.D. Pa. Aug. 22, 2023) (deciding government failed to establish disarmament of felon convicted of drug trafficking was consistent with historical tradition).

[10] *See, e.g., Harrison*, 2023 WL 4670957, at *8 (rejecting as-applied challenge to § 922(g)(1) where defendant had a "federal drug conviction"); *United States v. Mingues*, 2023 WL 9604697, at *7 n.11 (N.D.N.Y. Dec. 23, 2023) (concluding § 922(g)(1) was constitutional as applied to defendant convicted of "drug felonies"); *United States v. Mitchell*, 2023 WL 8006344, at *8 (S.D.N.Y. Nov. 17, 2023) (holding § 922(g)(1) was constitutional as applied to defendant with "three narcotics convictions[]" because "engagement in selling or possessing narcotics[]" is "a dangerous activity[]" and "the historical record supports applying restrictions on felons' possession of guns, regardless of the type of felony committed[]").

by physical menace to put another in fear of imminent serious bodily injury."). He was also convicted of leaving the scene of an accident. He does not describe his three other misdemeanor convictions. Even without more information, the court can easily find that at least three of Mr. Senna's convictions involve a risk of physical harm to a person or persons in the community. As the government points out in its opposition, there is a robust historical record supporting disarmament of individuals who share Mr. Senna's status as a felon who has committed a crime that poses a risk of danger to the community.

In light of *Bogle*'s controlling precedent, the evidence submitted by the government of a historical tradition of disarming felons, and persuasive in-circuit cases rejecting similar challenges, § 922(g)(1) is constitutional as applied to Mr. Senna.

## CONCLUSION

For the foregoing reasons, Mr. Senna's motion to dismiss Counts Two through Four of the Second Superseding Indictment is DENIED. (Doc. 130.) Mr. Senna's motion to suppress any in-court identification by Officer Huynh is DENIED AS MOOT. (Doc. 131.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 2ⁿᵈ day of April, 2024.

Christina Reiss, District Judge
United States District Court